Thomas E. Fraysse – SBN 104436
Maisie C. Sokolove – SBN 239665
Amanda M. Plowman – SBN 317462
**KNOX RICKSEN LLP**
2033 N. Main Street, Suite 340
Walnut Creek, CA 94596
Telephone:  (925) 433-2500
Facsimile:  (925) 433-2505

Attorneys for Plaintiff
and the Proposed Class

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **ROBERT L. WILSON,** on behalf of himself and all others similarly situated, | Case No. |
|  | **CLASS ACTION COMPLAINT DEMAND FOR JURY TRIAL** |
| Plaintiff, | **1. Violations of California Consumer Privacy Act** |
| vs. | **2. Violations of California Unfair Competition Law** |
| **BANK OF AMERICA, N.A.,** and DOES 1 – 20, inclusive, | **3. Violations of Electronic Funds Transfer Act (15 U.S.C. § 1693 _et seq._)** |
| Defendants. | **4. Negligence** |
|  | **5. Negligent Performance of Contract** |
|  | **6. Negligent Failure to Warn** |
|  | **7. Breach of Contract** |
|  | **8. Breach of Implied Contract** |
|  | **9. Breach of the Implied Covenant of Good Faith and Fair Dealing** |
|  | **10. Breach of Contract (Third-Party Beneficiaries)** |

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

Plaintiff Robert L. Wilson (hereinafter "Wilson" or "Plaintiff"), individually and on behalf of the class described below, brings this action against Defendant Bank of America, N.A. (hereinafter "Bank of America" or "Defendant"), demands a trial by jury, and makes the following allegations based on Plaintiff's personal knowledge as to those allegations pertaining to him, and on information and belief as to all other matters. Plaintiff alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is a class action brought on behalf of Plaintiff and all similarly situated individuals (hereinafter "the Class," as further defined in paragraph 32) who relied on Defendant Bank of America to competently administer the payment of unemployment insurance benefits provided by the State of California Employment Development Department (hereinafter "EDD") in the wake of the COVID-19 pandemic. The EDD, which provides a variety of support services to Californians who lost their jobs, had their hours reduced, or had their businesses negatively impacted by COVID-19, contracted with Defendant Bank of America to administer the payment of unemployment insurance benefits through debit cards funded by the EDD. In administering such benefits, Defendant Bank of America knowingly failed to use generally accepted and widely-used security measures related to debit cards, and instead used outdated, obsolete and fraud-prone technology, which resulted in the unauthorized access and fraudulent use of the debit cards by third parties. By electing to issue debit cards with magnetic stripes, a largely discredited and obsolete method of securing personal and financial information, instead of the industry-standard chip technology, Defendant Bank of America knew that Class members would be vulnerable to the theft of their personal and financial information and the fraudulent use of the debit cards by third persons. Predictably, such theft and fraud occurred to the financial detriment of the Class members. To make matters worse, after unauthorized third parties illegally accessed the debit cards issued to EDD recipients and withdrew monies from their accounts, Defendant Bank of America failed to act reasonably to promptly address and remedy the situation, abide by the terms of its contract with the State of California, and fulfill promises made to EDD recipients. Defendant Bank of America made decisions which it knew would result in further harm to the Class, given that EDD benefits – by their very nature – were and are intended to provide monies to meet basic needs of living.

2.    When EDD recipients discovered that funds had been fraudulently drained from their accounts, they experienced a frustrating lack of accessibility to customer or other support services offered by Defendant Bank of America. Defendant Bank of America failed to dedicate adequate resources to the investigation of the theft and illegal use of the debit cards; it failed to provide provisional credit and/or withdrew the provisional credit it previously issued; and, it failed to provide to EDD recipients a reasonable appeal process for disputes regarding their accounts. In a seemingly desperate and misguided attempt to quell the rampant fraud, and to squarely place its financial interest ahead of EDD recipients' financial interests, Defendant Bank of America, without warning, arbitrarily froze EDD accounts, including accounts which had not been fraudulently accessed, thereby depriving EDD recipients' access to funds of which they were in desperate need. As a result, hundreds of thousands of financially vulnerable EDD recipients were separated from the monetary lifeline necessary to sustain their basic human needs.

3.    Adding insult to injury, Defendant Bank of America failed to abide by the terms of its "California Employment Development Debit Card Account Agreement," which governs the use of debit cards issued to EDD recipients. The agreement has a "Zero Liability Policy," which states that cardholders are not responsible for the unauthorized use of their cards and that Bank of America would issue provisional credit for any transaction disputed by a cardholder as unauthorized or fraudulent pending the bank's investigation of the transaction. Rather than issue provisional credit as required, however, Bank of America instead arbitrarily froze funds without advance notice. For Plaintiff Robert L. Wilson and the Class, Defendant Bank of America not only failed to abide by the terms of its contract with the State of California, it knowingly deprived unemployed Californians of the benefits for which they qualified and which were necessary to make ends meet. In sum, Defendant Bank of America entered into a contract with the State of California to administer the payment of EDD benefits to EDD recipients, negligently chose to use obsolete and non-secure technology for the delivery of the benefits through the use of magnetic stripe debit cards despite knowing that a significant percentage of the cards would be subject to theft and unauthorized use by third parties, failed to properly staff customer service and investigative resources to address claims of theft and unauthorized use, and then callously reacted

1  to the predictable theft of personal and financial information and unauthorized use of the debit cards

2  by freezing access to accounts by the EDD recipients who so desperately needed the funds, all in

3  violation of its own policies and procedures. Defendant Bank of America, in contracting with the

4  State of California to administer the payment of EDD benefits, treated EDD recipients as if they

5  were a second class of Bank of America customers to whom reasonable services were not required.

## II.  JURISDICTION AND VENUE

6

7  4.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

8  §1332(a) because Plaintiff and the Class members are citizens of California, Bank of America is

9  incorporated in the State of Delaware with its principal place of business in North Carolina, and the

10  amount in controversy exceeds $75,000, excluding interests and costs.

11  5.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.

12  §1332(d) because the amount in controversy for the Class in this action exceeds $5,000,000,

13  exclusive of interest and costs, the majority of proposed class members are citizens of a state

14  different from Bank of America's home state, and the number of proposed class members exceeds

15  100 (as defined in paragraph 32.)

16  6.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331

17  as Plaintiff alleges a cause of action under the federal Electronic Funds Transfer Act 15 U.S.C.

18  §1693, *et seq.* and 28 U.S.C. §1367 regarding the causes of action arising under state law.

19  7.     The Court has specific personal jurisdiction over Bank of America because Bank of

20  America has sufficient minimum contacts with the State of California, has purposely availed itself

21  of the benefits and protection of California law, and does a substantial amount of business in and

22  with the State of California, including contracting with the State of California to provide services to

23  California citizens, such that the Court's exercise of personal jurisdiction accords with due process.

24  8.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial

25  portion of the acts or omissions giving rise to the claims in this Complaint occurred in this District,

26  and because Defendant is subject to the Court's personal jurisdiction with respect to this action.

## III. PARTIES

27

28  9.     Plaintiff Robert L. Wilson is a California citizen and resident of Stockton,

California. He worked in construction doing project management and estimating prior to the onset of the COVID-19 pandemic. After the pandemic hit, his work slowed to the point where there were no available opportunities for employment. He applied for and was determined by the State of California to be qualified to receive EDD unemployment benefits. After qualifying for benefits, Defendant Bank of America sent him an EDD Visa debit card, through which his EDD funds were delivered. The debit card was secured by a magnetic stripe only. Within months, Wilson discovered unauthorized transactions on his account totaling approximately $2,600.00. On learning that his debit card had been hacked by unknown individuals, Wilson promptly contacted Defendant Bank of America and notified it of the unauthorized transactions. He cooperated fully with the bank and its investigation. Although Defendant Bank of America initially credited to Wilson's account some of the funds withdrawn as a result of the unauthorized access to his account, those funds were later withdrawn and Wilson's account was frozen for a period of time. Now, months later, Wilson is still without the $2,600, as Defendant Bank of America has never restored the funds to his account.

10.     Defendant Bank of America, N.A., is one of the largest banking associations in the United States. It is incorporated in the state of Delaware with a principal place of business in Charlotte, North Carolina. Defendant conducts significant business in California, including but not limited to, administering EDD benefits through its exclusive contract with the State of California.

11.     The true names and capacities, whether individual, corporate, associate or otherwise, of any of the Defendants named herein as Does 1 through 20 are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names and will amend this complaint to show their true names and capacities together with appropriate charging allegations necessary when the same are ascertained. Does 1 through 20 were or are individuals or entities that are legally responsible in some manner for the conduct alleged herein; or are individuals or entities acting as agents or employees of the other Defendants, acting within the scope of agency or employment.

12.     Plaintiff alleges that at all times relevant to the events giving rise to this action, each and every Defendant was acting within the course and scope of that agency or employment at the direction of or with the full knowledge, permission or consent of each and every other Defendant. In addition, each of the acts or omissions of each and every Defendant was made known to, and

ratified by, each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

**Defendant Bank of America's Contract with the California EDD and Defendant's Use of Obsolete and Fraud-Prone Magnetic Stripe Debit Cards**

13.    The EDD provides a variety of services to millions of Californians, including the administration of unemployment insurance and state disability programs to help support California's economy through income replacement and assistance in the reemployment of workers. Since 2010, Defendant Bank of America has had an exclusive contract with the EDD to administer the payment of state unemployment benefits. The bank's decade-old contract with the EDD was offered at no direct cost to the State of California, with Defendant Bank of America instead earning revenue from merchant transaction fees and gaining access to millions of potential customers. The bank saw the opportunity to administer the EDD payments as a low-cost method to market its services to hundreds of thousands, if not millions, of Californians and to increase its own bottom line. At all times herein relevant, Defendant Bank of America consistently represented to the EDD that it would provide high quality fraud monitoring and safeguards, and extensive security. This did not occur.

14.    Despite the representations made to the State of California and to EDD recipients regarding security, and even though chip technology was the standard in the financial industry since late 2015, Defendant Bank of America continued to issue Visa debit cards with the obsolete and fraud-prone magnetic stripe to EDD recipients, thereby knowingly putting cardholders at risk of unauthorized transactions and the bank at risk to cover such transactions per its published policies. Defendant Bank of America knew, at all times, that by failing to update to the more secure technology, it was taking a risk of financial loss which could not be shifted to either the State of California or EDD recipients.

15.    Defendant Bank of America has known for years that magnetic stripe cards are obsolete technology in the financial and credit card industry. Magnetic stripe cards store information in a manner similar to a memory stick. The information stored on the cards can be read electronically by a stripe reader, thereby rendering the cards vulnerable to hacking. The cards are

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

pre-loaded with "static" information regarding the cardholder's personal and financial information, including the cardholder's name, account information, and card expiration date. The information stored on the cards is easily accessible through a stripe reader, thereby rendering the cards particularly vulnerable to hacking and fraud by third parties. This lack of effective security has been known for years within the credit card industry. Hacking methods, such as "skimming" and "card cloning" are common fraud schemes associated with cards with magnetic stripes, by which the third-party criminal obtains the static information from a magnetic stripe using a card reader and then creates a new card with the skimmed information. This inherent vulnerability of magnetic stripe cards led to the development and widespread use of EMV (Europay, Mastercard and Visa) chips on debit and credit cards, which do not have "static" information that may be readily downloaded by anyone with a stripe reader.

16.     At all times herein relevant, Defendant Bank of America knew that EMV chips on credit and debit cards make it extremely difficult for criminals to access information stored on the cards because they use "dynamic," rather than "static," information. Unlike creating a physical clone of a magnetic stripe card, it is very difficult for a criminal to manufacture another card with a functional EMV chip. And, because the chip produces a unique code for each transaction for which the card is used, it is nearly impossible to skim the card's data for viable use for a later illegal, unauthorized transaction, as the same code would not be used for subsequent transactions.

17.     While Europe and Canada had been using chip systems for more than a decade, a nationwide shift to the use of EMV chips in the United States only began in 2015. At that time, in October 2015, major credit card companies, including Mastercard, Visa, and American Express, *required* that all of their banks and retailers be able to process chip cards lest they be liable for fraudulent transactions. In fact, Defendant Bank of America openly acknowledges on its website that EMV chips are a security standard and such transactions are more secure. Despite its own widespread use of EMV chips in debit and credit cards issued to its customers, and despite its actual knowledge of the vulnerability of magnetic stripe cards to theft and fraud schemes, as of 2020, Bank of America continued to issue debit cards with magnetic stripes only to EDD recipients.

///

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Wilson v. Bank of America, N.A.*

**Predictable Fraud Occurs and Bank of America Fails at Every Turn to Remedy the Situation**

18.    In early 2020, the COVID-19 pandemic caused severe repercussions for California's economy, including unemployment for hundreds of thousands of Californians. As a consequence, Plaintiff and others in the Class applied for and were qualified by the EDD to receive unemployment benefits. To administer the payment of EDD benefits, Defendant Bank of America issued hundreds of thousands of debit cards with magnetic stripes so that EDD recipients could use the cards to purchase the basic necessities of life.

19.    Plaintiff was approved by the California EDD for unemployment insurance benefits on or around April of 2020, and received a Bank of America debit card with a magnetic stripe soon thereafter. In or about September or October of 2020, he discovered that approximately $2,600.00 of EDD funds in his account had been drawn down through unauthorized transactions. His card had been compromised, hacked. Accordingly, he promptly contacted Defendant Bank of America. He was informed that the unauthorized transactions had occurred in Southern California and he confirmed that he had not used his card in Southern California. Defendant's representative told Plaintiff that the bank would investigate the unauthorized use of the card and would, in the meantime, provide provisional credit.

20.    A few weeks later, however, the provisional credit was deducted from Plaintiff's EDD account by Defendant and the account was frozen, all without warning or explanation. Plaintiff then attempted to contact a representative with Defendant Bank of America to resolve the issue. He tried approximately 30 to 40 times without success. Eventually, by working with and through the EDD, his account was unfrozen, but to date, the $2,600.00 that was stolen from his account through unauthorized transactions has not be replaced by defendant Bank of America, notwithstanding Defendants published "Zero Liability Policy" that requires the bank to cover the unauthorized transactions.

21.    Plaintiff's experience with Defendant Bank of America is common among members of the Class. The press has carried numerous stories and articles describing other EDD recipients who reported discovering unauthorized transactions in their EDD accounts, including ATM withdrawals on the debit cards, occurring in California, other states, and internationally. Defendant

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

is clearly aware of the magnitude of the security breach issue involving the magnetic stripe debit cards: In an email from Bank of America's regional executive, Bobby Chestnut, Chestnut describes an individual caught on videotape at a Bank of America ATM "with a stack of EDD prepaid cards in hand and fed them into the terminal, one after the other, until he managed to withdraw over $35,000."[1] Moreover, in response to inquiry from the California State Legislature, Defendant Bank of America now claims that due to the use of the obsolete magnetic stripe debit cards it has now lost "hundreds of millions" of dollars.[2] Defendant Bank of America, in attempting to maximize profit out of the contract with the State of California, created the opportunity for criminals to hack into the debit cards, all the while representing to the State of California and to EDD recipients that it would cover losses due to fraud and unauthorized use of the debit cards, and now has the audacity to complain that it is losing money when the cards were predictably hacked.

22.   Defendant Bank of America breached its contractual obligations to the State of California and to the members of the Class. Instead of honoring its obligations, it is attempting to shift losses to the EDD recipients, which, in the context of the current COVID-19 related economic crisis, is simply unconscionable. It is estimated that Defendant Bank of America chose to freeze approximately 350,000 EDD accounts due to the rampant, and predictable unauthorized transactions. To prevent further fraud, and to protect its own financial interests vis-à-vis its Zero Liability Policy, Defendant Bank of America even froze accounts of EDD recipients who did not have any fraudulent, unauthorized, or unusual activity on their debit cards. At all times herein relevant, Defendant Bank of America knew that by issuing debit cards with magnetic stripe technology, it was putting EDD funds at risk for theft, unauthorized transactions and fraud. It also knew that EDD recipients were dependent on those funds for their own health, safety and well-being. Those funds were provided by the State of California to pay for the basic necessities of life –

---

[1] Kenny Choi, "UPDATE: California EDD, Bank of America At Odds Over Resolving Fraud Victims' Claims" *KPIX-CBS SF Bay Area* (January 13, 2021), *available at* https://sanfrancisco.cbslocal.com/2021/01/13/update-california-edd-bank-of-america-at-odds-over-resolving-fraud-victims-claims/.
[2] Lauren Hepler, "Bank of America Says It Lost 'Hundreds of Millions' on California's Unemployment Fiasco," *CalMatters* (January 26, 2021), *available at* https://calmatters.org/california-divide/2021/01/bank-of-america-lost-hundreds-of-millions-on-california-unemployment-fiasco/.

food and a safe place to reside pending reemployment. Despite this knowledge, Defendant Bank of America knowingly made its decisions with a conscious disregard of the rights of the EDD recipients they served, to cut off access to EDD accounts so that it could prevent unauthorized access to such funds for which it would be ultimately liable. In so doing, it decided that its financial interests were more important than ensuring that qualified EDD recipients received their necessary benefits.

23.     To make matters significantly worse, Defendant Bank of America failed to provide reasonable levels of customer service to EDD recipients whose funds were frozen and inaccessible. Class members were and are unable to reach customer or other resolution services via phone or email despite numerous calls, hours waiting on hold, multiple disconnections, ineffective transfers, and other frustrating circumstances. In those instances in which EDD recipients were able to make claims, Defendant Bank of America failed to properly and promptly investigate the claims and deprived the recipients of the funds they so desperately needed.

24.     The conduct of Defendant Bank of America is clearly inconsistent with the instructions given to EDD recipients in the bank's California Employment Development Debit Card Account Agreement ("Account Agreement" attached herein as Exhibit A and incorporated into this complaint by reference), which directs EDD customers to call Bank of America to notify it of any unauthorized use or theft of their card. Per the agreement, calling Bank of America by telephone is the best way to keep losses down. Bank of America's EDD Debit Card FAQ webpage[3] represents that Bank of America's customer service representatives are available "24 hours [a] day, 7 days a week" by phone to assist with investigating transactions and processing stolen card reports, among other account related services. This, as it turns out, was simply untrue and was not what the EDD recipients experienced when they attempted to resolve their account concerns.

25.     Defendant Bank of America assured EDD recipients that losses due to fraud and unauthorized transactions would be covered by the bank. Defendant Bank of America represented to EDD recipients in a document entitled the "Quick Reference Guide" that it would reimburse

---

[3] "Cardholder Frequently Asked Questions" *Bank of America*, *available at* https://prepaid.bankofamerica.com/eddcard/Program/FAQ.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Wilson v. Bank of America, N.A.*

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

EDD recipients for any unauthorized card transactions if their card was stolen. The EDD Debit Card Account Agreement also plainly states that EDD customers will be not liable for unauthorized or fraudulent transactions under their Zero Liability Policy. Section 9 of the agreement states:

> Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to the following terms and conditions . . . .

26.     For the Zero Liability policy to occur, the EDD recipient was required to contact Bank of America regarding the unauthorized transaction or theft "within a reasonable time of the loss or theft." A reasonable time is determined through Defendant's "sole discretion based on the circumstances but will not be less than the time frames specified under the Electronic Fund Act or Regulation E." Additionally if the claim did not meet Defendant's conditions, the card holder maintained their consumer rights under Regulation E and Bank of America would "automatically re-examine the claim in accordance with those rights."

27.     Section 10 of the Account Agreement titled "Regulation E Liability Disclosure; Your Liability in Case of Loss, Theft, or Unauthorized Transactions" stated:

> "Please contact us at the numbers listed below AT ONCE if you believe your Card has been lost or stolen, or if you believe that someone may use or has used your PIN assigned to your Card without your permission. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your Account. If you tell us within two business days after you learn of the loss or theft, you can lose no more than $50 for an unauthorized transaction or a series of related unauthorized transfers should someone use your Card or PIN.
>
> If you do NOT tell us within two business days after you learn of the loss or theft of your Card or PIN and we can prove we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500."

28.     The section continues directing the cardholders to notify Defendant "at once," but "no later than 60 days" after Bank of America sent the statement on which the error appeared.

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

29.    Given the ineffective state of Bank of America's customer service and telephone support this requirement was more than a daunting task, with hundreds of thousands of EDD recipients unsuccessful in their efforts to do so. Instead, Defendant Bank of America has knowingly failed to abide by its own Zero Liability Policy, to restore funds fraudulently extracted from the EDD recipients' accounts and those recipients continue to bear the cost of Bank of America's decision to use outdated magnetic stripe technology on the debit cards issued to EDD recipients.

30.    In failing to properly provide customer service to the EDD recipients, Defendant Bank of America also violated Section 11 of the EDD Debit Card Account Agreement which addresses the timing on resolving issues:

> We will determine whether an error occurred within 10 business days after we hear from you—and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your Account within 10 business days for the amount you think is in error, so that you will have the money during the time it takes us to complete our investigation.

31.    With full knowledge of the impact of depriving EDD recipients of EDD funds, Defendant Bank of America chose to remedy a problem it created by issuing non-secure debit cards and transferring the risk to the EDD recipient all in violation of its own standards, its representations to the EDD recipients and its obligations contractually to the State of California in promising to competently administer payments of EDD benefits. The EDD recipients were and are obviously the least able individuals to take on the risk of theft, fraud and unauthorized transactions due to the use of outdated technology on the debit cards. They depended on every dime of the money the EDD deposited into their accounts for their own health, safety and well-being. It is unconscionable that defendant Bank of America would treat any human being with such callous disregard. And it is abundantly clear in the aftermath of this fiasco that Defendant Bank of America has acted solely to protect its own financial interests even though it created the opportunity for criminal third parties to successfully pull off well-known credit card fraud schemes on a mass scale.

32.    In November of 2020, 59 California lawmakers sent a letter to Defendant Bank of America regarding its failure to properly administer payments to EDD recipients. Assemblyman David Chiu separately chastised Bank of America, stating, "[t]he fact that these cards didn't have

the appropriate anti-fraud technologies and the typical chip technologies that all of us use in every other context is just not acceptable. And we need to hold both EDD and Bank of America accountable for what is happening right now."[4]

33.    Defendant Bank of America knowingly failed the Class from the very beginning by issuing debit cards with obsolete security technology. It continues to fail to keep the Class member's account information secure, provide reasonable or adequate assistance to remedy the account concerns, investigate and resolve Class member claims in a timely manner, and provide provisional credit. It has unjustifiably withheld and frozen EDD funds that rightfully belong to the members of the Class.  The failure to take proper steps to secure the debit cards and accounts and the response by the bank has prompted this action, which impacts hundreds of thousands of Californians.

## V. CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action on his own behalf and on behalf of all persons similarly situated as members of the proposed subclasses (collectively, the 'Class') pursuant to Federal Rule of Civil Procedure 23, seeking declaratory and equitable relief on behalf of the following two subclasses:

**Declaratory and Injunctive Relief Class**: All persons who were lawfully issued a Bank of America debit card for the purpose of accessing EDD benefits deposited into a Bank of America account, during the period from and including January 1, 2020, through the present ("Class Period").

**Frozen Account Class**: All persons who were lawfully issued a Bank of America debit card for the purpose of accessing EDD benefits deposited into a Bank of America account, during the period from and including January 1, 2020, through the present ("Class Period"), and who were denied access to all or part of the EDD benefits on deposit with Bank of America due to Bank of America freezing EDD accounts.

---

[4] Kenny Choi, "UPDATE: Outrage Mounts After Bank of America Denies Claims from Victims of EDD Bank Card Scammers" *KPIX-CBS SF Bay Area* (November 9, 2020) *available at* https://sanfrancisco.cbslocal.com/2020/11/09/outrage-mounts-after-bank-of-america-denies-claims-from-victims-of-edd-bank-card-scammers/.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Wilson v. Bank of America, N.A.*

35.    Excluded from the above-proposed Class is Defendant's officers and directors and any entity in which any Defendant has a controlling interest.

36.    Plaintiff reserves the right under Rule 23 to amend or modify the class descriptions with greater specificity or further division into subclasses or limitation to particular issues, based on information learned after the filing of this Complaint.

37.    This action has been brought and may properly be maintained as a class action against Bank of America pursuant to the provisions of Rule 23.

    a.  **Numerosity (Rule 23(a)(1))**: The members of the Class are so numerous that their individual joinder is impracticable. The putative Class consists of hundreds of thousands of people, or more, who received EDD debit cards with magnetic stripes issued by Bank of America during the Class Period, and those who otherwise meet the criteria to be members of the putative Class as defined above. Insofar as class members may be identified through business records regularly maintained by Bank of America or Bank of America's employees, agents, principles, joint venturers, partners, affiliates, parents, or subsidiaries, and through the media, the number and identities of putative Class members can be ascertained. Members of the putative Class can be notified of the pending action by e-mail, U.S. mail, and supplemented by published notice, if necessary.

    b.  **Commonality (Rule 23(a)(2) and 23(b)(3))**: There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual class members. These common legal and factual issues include, but are not limited to:

        i.  Whether Defendant systematically engaged in conduct that constitutes *per se* violations of state and federal laws with respect to the distribution of EDD benefits through Bank of America debit cards, or with respect to any other performance under its contract with EDD;

        ii.  Whether Defendant breached the duty of care it owed to persons who received Bank of America debit cards with magnetic strips for the purpose of

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

accessing EDD unemployment or other benefits;

   iii.   Whether Defendant should be enjoined from freezing the EDD benefit accounts of EDD accountholders and/or the EDD debit cards of EDD cardholders;

   iv.   Whether Defendant's conduct breached any express or implied contract with EDD or any state agency, with the recipients of EDD debit cards, or with any member of the putative Class;

   v.   Whether Defendant must provide damages, restitution, reimbursement, and/or other relief to EDD cardholders in the amount of any fraudulent or unauthorized transactions affecting their EDD debit cards, and/or whether Defendant must provide any such relief for foreseeable harm to the EDD cardholders resulting from Bank of America's unlawful conduct.

c.  **Typicality (Rule 23(a)(3))**: Plaintiff's claims are typical of the claims of the members of the putative Class. Plaintiff, like all other members of the putative Class, has sustained damages arising from Defendant's violations of the law, as alleged herein. The representative Plaintiff and the members of the putative Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant.

d.  **Adequacy of Representation (Rule 23(a)(4))**: The representative Plaintiff will fairly and adequately represent and protect the interests of the putative Class members, and he has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the putative Class that would make class certification inappropriate. Counsel for the putative Class will vigorously assert the claims of all putative Class members.

38.   This action is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure for the following reasons:

a.  **Class Action Status (Rule 23(b)(1))**: Class action status is warranted here under

KNOX RICKSEN LLP

ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

Rule 23(b)(1)(A) because prosecution of separate actions by putative Class members would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by putative Class members would create a risk of adjudication with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

b. **Declaratory and Injunctive Relief (Rule 23(b)(2))**: Certification under Rule 23(b)(2) is warranted because Defendant acted or refused to act on grounds generally applicable to the putative Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the putative Class as a whole.

c. **Superiority (Rule 23(b)(3))**: Certification under Rule 23(b)(3) is appropriate because questions of law or fact common to putative Class members predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

d. The Class is ascertainable, and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each Class member were infringed or violated in the same or similar fashion.

## **FIRST CAUSE OF ACTION**
(California Consumer Privacy Act)
(California Civil Code §1798.100, *et seq.*)
(As to Defendant and DOES 1-20)

39.     Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

40.     The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100, *et seq.*, provides consumers with a private right of action against businesses when their personal information is subject to unauthorized access, theft, or disclosure as a result of a business's breach

of its duty to take reasonable steps to protect that information.

41.     Plaintiff and Class members are "consumers" as defined in the CCPA.

42.     Defendant Bank of America is a "business" as that term is defined in the CCPA and therefore is subject to liability to thereunder.

43.     Bank of America directly or indirectly collected Plaintiff's and Class members' personal information as defined in Cal. Civ. Code § 1798.81.5(d)(1)(A), including but not limited to Plaintiff's and Class member's first names or first initials, last names and account numbers or credit or debit card numbers, in combination with any required security codes, access codes, or passwords that would permit access to an individual's financial accounts.

44.     Plaintiff's and Class members' individual and collective personal information was collected, stored, and/or transmitted by Bank of America in a nonencrypted and nonredacted form, or in some other form that permitted unauthorized individuals to access that information in violation of the CCPA.

45.     As a business, Defendant Bank of America had a duty under CCPA to implement and maintain reasonable security procedures and practices appropriate to the nature of Plaintiff and Class members' personal information.

46.     Defendant Bank of America breached its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of Plaintiff's and Class members' personal information by, among other things, issuing EDD debit cards to Plaintiff and Class members with magnetic stripes but without EMV chip technology.

47.     Upon information and belief, Defendant Bank of America further failed to implement and maintain reasonable security measures by transferring information regarding Plaintiff and Class members' EDD debit cards to, and storing it on, unsecured or inadequately secured data storage devices, including at EDD.

48.     As a direct and proximate result of Defendant Bank of America's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of Plaintiff and Class members' personal information, Plaintiff and Class members suffered unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted

personal information. Plaintiff and Class members never authorized such disclosure of their personal information.

49.    Defendant Bank of America knew or should have known that issuing EDD debit cards with magnetic stripes but without EMV chip technology was not a reasonable security procedure or practice appropriate to the nature of Plaintiff and Class members' personal information and that a data breach resulting in the unauthorized access and exfiltration, theft, or disclosure of Plaintiff and Class members' personal information was highly foreseeable.

50.    As a direct and proximate result of the unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted personal information, Plaintiff and Class members were injured and lost and/or continue to lose money or property, including but not limited to the monetary value of unauthorized transactions on the EDD debit cards issued by Defendant, the loss of Plaintiff and Class members' protected privacy interests in the confidentiality and privacy of their personal information, nominal damages, and additional losses as described above.

51.    Plaintiff and Class members seek relief under Cal. Civ. Code § 1798.150(a), including but not limited to recovery of actual damages, statutory damages, injunctive relief, declaratory relief, its costs of suit, attorney's fees pursuant to Cal. Code Civ. Proc. § 1021.5 or other applicable law, and any other relief the court deems proper.

## SECOND CAUSE OF ACTION
(California Unfair Competition Act)
(California Business and Professions Code § 17200, *et seq.*)
(As to Defendant and DOES 1-20)

52.    Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

53.    California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof Code § 17200, *et seq.*

54.    Defendant Bank of America's "unfair" acts and business practices include, among other things: (a) failing to transfer or store EDD cardholder and account information in a secure manner; (b) representing to the State of California that its EDD debit cards and card services would provide high quality fraud monitoring and safeguards and extensive security and then failing to

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

KNOX RICKSEN LLP

ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

equip its EDD debit cards with EMV microchip technology despite knowing that such technology would be a necessary component of fraud monitoring; (c) failing to provide reasonable or adequate telephone assistance to Plaintiff and other Class members despite representing to them that such assistance is available "24/7" and despite representing to them that "Telephoning is the best way of keeping your possible losses down"; (d) failing to investigate and resolve Plaintiff's and Class members' claims of unauthorized transactions in a timely manner despite its "Zero Liability" policy for unauthorized transactions; and (e) failing to extend provisional credit to Plaintiff and class Members in cases where it is unable to timely investigate and resolve fraud claims.

55.    Defendant Bank of America's acts, omissions, and conduct are "unfair" under the UCL because those acts, omissions, and conduct, as alleged herein, offend public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class members. The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct, and there were reasonably available alternatives to further Defendant's legitimate business interests—namely issuing EDD debit cards with EMV microchips and maintaining procedures and resources adequate to timely resolve reports of fraudulent activity on prepaid EDD accounts—other than Defendant Bank of America's conduct described herein.

56.    Defendant Bank of America has engaged in "unlawful" acts and business practices by violating multiple laws, including the California Consumer Privacy Act, as alleged herein; Regulation E of the federal Electronic Funds Transfer Act ("Regulation E"), which requires Bank of America to limit EDD cardholders' liability for unauthorized transactions and to extend provisional credit to EDD cardholders in cases where a fraud claim is not resolved within ten business days; and California statutory and common law, as alleged herein.

57.    As alleged herein, Defendant Bank of America expressly represented to Plaintiff and Class members, among other things, that EDD cardholders would have "Zero Liability" for unauthorized transactions, and that customer service representatives would be available 24 hours a day, seven days a week, to address Plaintiff's and Class members' issues regarding unauthorized transactions.

58.     Defendant Bank of America has engaged in "fraudulent" acts and business practices because its false representations to EDD cardholders that they would have "Zero Liability" for unauthorized transactions and that customer service representatives would be available 24 hours a day, seven days a week were likely to deceive, and did deceive, Plaintiff and Class members into using Defendant's EDD debit card services to receive EDD benefits (instead of, for example, opting to receive EDD benefits via paper check) and into using Defendant's EDD debit card services with substantially less vigilance than they otherwise would have, had they known about Defendant's fraudulent acts and business practices and false representations, as alleged herein.

59.     As a result of Defendant Bank of America's violations of the UCL, Plaintiff and Class members are entitled to injunctive relief (a) prohibiting Defendant from continuing its unfair, unlawful, and deceptive business practices, and (b) requiring Defendant to take reasonable measures to prevent future unauthorized use of EDD debit cards and accounts and to ensure timely and adequate processing of EDD cardholders' claims regarding unauthorized or fraudulent use of their EDD debit cards or accounts.

60.     As a result of Defendant's violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property, including but not limited to the funds lost to fraud that have not been reimbursed, fees paid to Defendant, and lost interest that would have accrued on funds during the period of time when the funds were unavailable due to Defendant's failure to timely and adequately investigate claims of unauthorized transactions and other violations of the UCL.

**THIRD CAUSE OF ACTION**
(Violations of the Electronic Funds Transfer Act)
(15 U.S.C. §1693, *et seq.*; 12 C.F.R. §1005.1 *et seq.*)
(As to Defendant and DOES 1-20)

61.     Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

62.     Plaintiff brings this cause of action pursuant to the United States Electronic Funds Transfer Act ("EFTA") and 12 C.F.R. §§ 1005.1–1005.20 (Regulation E of the EFTA).

63.     Plaintiff and Class members provided notice to Bank of America within 60 days

after Bank of America sent a period statement reflecting an unauthorized transaction (which is an "error" under Regulation E), thereby triggering the error resolution requirements of 12 C.F.R. § 1005.11.

64.    Defendant Bank of America violated Regulation E, 12 C.F.R. § 1005.11, because it failed to provide provisional credit to Plaintiff and Class members accounts relating to error investigations that could not be resolved within 10 business days.

65.    In situations where Defendant has violated Regulation E by failing to provisionally Plaintiff's and Class members' accounts, it has failed to conduct good faith investigations into the unauthorized transactions that Plaintiff and Class members have reported or attempted to report by, among other things, failing to provide Plaintiff and Class members reasonable access to its customer service, and failing to provide Plaintiff and Class members meaningful assistance when they have been able to reach customer service. Plaintiff and Class members are therefore entitled to treble damages under 15 U.S.C. § 1693f(e).

66.    In situations where Defendant Bank of America has violated Regulation E by failing to provisionally re-credit Plaintiff's and Class members' accounts, Defendant has not had a reasonable basis for believing that the account was not in error. Instead, Defendant: (a) has made it unreasonably difficult for EDD cardholders to report suspected unauthorized transactions, and (b) has not used, at all relevant times, and is not currently using, the resources and procedures necessary to resolve the levels of fraud that are occurring on Plaintiff's and Class members' accounts. This demonstrates that Defendant has been unable or unwilling to form a reasonable basis for believing an account was not in error. Plaintiff and Class members are therefore entitled to treble damages under 15 U.S.C. § 1693f(e).

67.    Defendant Bank of America knowingly and willfully concluded that Plaintiff's and Class members' accounts were not in error when such conclusions could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation. Plaintiff and Class members are therefore entitled to treble damages under 15 U.S.C. § 1693f(e).

68.    Defendant Bank of America violated Regulation E by failing to limit Plaintiff's and Class members' liability as required by 12 C.F.R. § 1005.6(b).

KNOX RICKSEN LLP

ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

69.    Plaintiff promptly provided notice to Defendant less than two business days after learning of the fraudulent transactions that occurred in his EDD Bank of America account. Under 12 C.F.R. § 1005.6(b)(1), Plaintiff's and similarly-situated Class members' liability is capped at $50 in these circumstances. Despite this cap on liability, Defendant has subjected Plaintiff and similarly-situated Class members to over $50 in liability.

70.    Under 12 C.F.R. § 1005.6(b)(2), $500 is the maximum liability when an accountholder does not provide notice to the financial institution within two business days after learning of a suspected unauthorized transaction.

71.    Regarding any Class members who did not provide Defendant with actual notice within two business days of learning of a suspected unauthorized transaction, Defendant was on constructive notice, under 12 C.F.R. §1005.6(b)(5)(iii), of widespread unauthorized electronic funds transfers from EDD debit card accounts since the beginning of the COVID-19 pandemic. Since that time, countless unauthorized fund transfers have occurred and continue to occur from EDD accounts. The volume of calls from EDD cardholders to Defendant's customer service to report unauthorized transactions has been, and continues to be, so great that EDD cardholders routinely wait on hold for multiple hours. The widespread fraud specifically targeting EDD cardholders has been widely reported in the media and has been the subject of significant attention from California legislators.

72.    In no event should any class member be liable for over $500 of damages under 12 C.F.R. § 1005.6. Defendant Bank of America has violated 12 C.F.R. § 1005.6 by imposing hundreds and thousands of dollars of liability on unemployed Californians.

73.    As a direct and proximate result of Defendant violating Regulation E, Plaintiff and Class members have lost money.

74.    Plaintiff, on behalf of himself and the Class, seeks the following relief: (a) actual damages; (b) restitution of all EDD benefits funds improperly debited by Defendant Bank of America; (c) statutory damages; (d) treble damages pursuant to 15 U.S.C. § 1693f(e); (e) incidental and consequential damages suffered due to his and Class members' inability to pay bills or otherwise use their unemployment funds; and (f) an injunction barring Bank of America from

illegally debiting EDD benefits.

## FOURTH CAUSE OF ACTION
(Negligence)
(As to Defendant and DOES 1-20)

75.     Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

76.     Defendant Bank of America owed a duty to Plaintiff and the other Class members to exercise reasonable care to (a) safeguard their unemployment and other EDD benefits; (b) respond to the rise in use of unemployment and other EDD benefits that occurred in 2020 (both in terms of the amount of benefits paid out and the number of recipients) by issuing them EDD debit cards with EMV chips (to all new and existing EDD cardholders); (c) ensure that its customer service staffing levels, technology, and operations were capable of providing them with reasonably timely and effective customer service, including for fraudulent or unauthorized transactions related to their EDD debit cards or accounts; (d) provide them with reasonable and adequate notice that their EDD debit cards and accounts were at risk of being subject to unauthorized use; (e) timely and adequately investigate and resolve their claims regarding unauthorized or fraudulent transactions; and (f) extend to them provisional credit in cases where Bank of America fails to timely resolve their fraud-related claims.

77.     Defendant Bank of America breached its duty to Plaintiff and Class members by, among other things: (a) failing to transfer or store their EDD cardholder and account information in a secure manner; (b) failing to issue them EDD debit cards with EMV chips, despite having for years been well-aware of the risks associated with magnetic "stripe" technology; (c) failing to respond to the dramatic increase in EDD benefits recipients and dollars (which foreseeably would make EDD debit cards and accounts of greater interest to bad actors) by issuing EDD debit cards with EMV chips to all new and existing EDD cardholders, and taking other reasonably prudent security measures to prevent fraudulent and unauthorized transactions; (d) failing to ensure its customer service operation was capable of providing reasonably timely and effective assistance to Plaintiff and Class members, including when they are victims of fraudulent or unauthorized transactions; (e) failing to give reasonable and adequate notice to Plaintiff and Class members that

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Wilson v. Bank of America, N.A.*

their EDD benefits were and remain at risk of being vulnerable to fraudulent and unauthorized transactions; (f) failing process EDD cardholders' claims regarding fraudulent or unauthorized transactions in a reasonably timely and adequate manner; and (g) failing to extend provisional credit to Plaintiff and Class members when Bank of America fails to resolve their claims regarding fraudulent or unauthorized transactions in a reasonably timely and adequate manner.

78.    Defendant Bank of America's misconduct concerning its failure to safeguard EDD cardholders' funds is inconsistent with industry standards, which prescribe using EMV chip technology in debit cards.

79.    Defendant's misconduct concerning its failure to timely and adequately respond to Plaintiff's and Class members' claims of fraudulent and unauthorized transactions on their EDD debit cards or accounts is inconsistent with industry regulations, including Regulation E.

80.    Defendant's misconduct is inconsistent with its own policies and procedures for non-EDD debit card accounts, for which it consistently deploys EMV chip technology to prevent fraud.

81.    The harm inflicted upon Plaintiff and other Class members was reasonably foreseeable to Bank of America because it was and is well aware of the security risks associated with magnetic stripe technology, and because it knew or should have known its customer service resources and/or procedures were insufficient to accommodate issues stemming from the significant increase in EDD benefits and EDD benefits recipients due to the sharp rise in unemployment in the State of California caused by or related to the COVID-19 pandemic, as well as the well-publicized sharp rise in financial fraud during the COVID-19 pandemic, both of which would foreseeably lead to an increased demand for customer service by Plaintiff and Class members for all purposes, including for the purpose of reporting and attempting to resolve claims of fraudulent or unauthorized transactions.

82.    As a direct and proximate result of Bank of America's misconduct, Plaintiff and Class members have been deprived of their EDD benefits and have failed to receive accrued interest thereon.

///

///

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
*Wilson v. Bank of America, N.A.*

**FIFTH CAUSE OF ACTION**
(Negligent Performance of Contract)
(As to Defendant and DOES 1-20)

83. Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

84. Defendant Bank of America owed a duty to Plaintiff and the other Class members to exercise reasonable care in performing its contract with the State of California because Plaintiff and other Class members were and are intended beneficiaries of the contract. To fulfill this duty, Defendant was and is obligated to: (a) safeguard Plaintiff's and Class members' EDD benefits; (b) respond to the rise in demand for EDD benefits which occurred in 2020 by issuing chip cards; (c) ensure its customer service operation was capable of providing effective assistance to EDD cardholders who experience fraud on their debit card; (d) warn or notify Plaintiff and Class members if their EDD benefits were at risk of being subject to unauthorized use; (e) to timely and adequately investigate and resolve claims regarding unauthorized transactions; and (f) extend provisional credit in cases where fraud claims are not timely resolved.

85. Defendant Bank of America breached its duty to Plaintiff and Class members by, among other things: (a) failing to transfer or store their EDD cardholder and account information in a secure manner; (b) failing to issue EDD debit cards with microchips, despite having for years been well- aware of the risks associated with magnetic "stripe" technology; (c) failing to respond to the rise in demand for EDD benefits by issuing chip cards; (d) failing to ensure its customer service operation was capable of providing effective assistance to EDD cardholders who experience fraud on their debit card; (e) failing to warn or notify EDD cardholders that their EDD benefits were and remain at risk of being subject to unauthorized use; (f) failing to timely or adequately process EDD cardholders' claims regarding unauthorized transactions; and (g) failing to extend provisional credit in cases where fraud claims are not timely resolved.

86. Defendant Bank of America's misconduct with regard to its failure to safeguard EDD cardholders' funds is inconsistent with industry standards, which prescribe using EMV chip technology in debit cards.

87. Defendant Bank of America's misconduct with regard to its failure to timely and

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

adequately respond to claims of fraud on EDD debit cards is inconsistent with industry regulations, including Regulation E.

88.     Defendant Bank of America's misconduct is inconsistent with its own policies and procedures for non-EDD debit card accounts, for which it implements EMV chip technology to prevent fraud.

89.     The harm inflicted upon Plaintiff and other Class members was reasonably foreseeable to Defendant because it was well aware of the security risks associated with magnetic stripe technology, was aware that EDD cardholder and account information should be transferred and stored in a secure manner, and knew or should have known its customer service resources and/or procedures were insufficient to accommodate issues stemming from the increased distribution of EDD benefits which foreseeably entailed an increase in fraud claims.

90.     As a direct and proximate result of Defendant Bank of America's misconduct, Plaintiff and Class members have been deprived of their EDD benefits and have failed to receive the accrued interest thereon.

## SIXTH CAUSE OF ACTION
(Negligent Failure to Warn)
(As to Defendant and DOES 1-20)

91.     Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

92.     During all times relevant to this Complaint, Defendant Bank of America had actual or constructive knowledge of all relevant aspects of the vulnerabilities to fraud of using magnetic stripe technology in debit cards.

93.     During all times relevant to this Complaint, Defendant Bank of America had a duty to exercise reasonable and ordinary care and skill, and to behave in accordance with applicable standards of conduct, in adequately warning EDD cardholders about the fact that their EDD benefits would be at a substantial risk of being fraudulently appropriated due to the magnetic stripe technology used in its cards.

94.     Defendant breached its duty by failing to adequately warn EDD cardholders about the risks associated with magnetic stripe technology in debit cards.

KNOX RICKSEN LLP

ATTORNEYS AT LAW

2033 N. MAIN STREET, SUITE 340

WALNUT CREEK, CALIFORNIA 94596-3727

95.     As a direct and proximate consequence of Defendant's breach, Plaintiff and Class member have been severely harmed. Plaintiff and Class members have been deprived of the EDD benefits which, in many cases, represented their only available funds.

96.     Defendant Bank of America's failure to warn was willful, malicious, oppressive, fraudulent, and/or in reckless disregard of Plaintiff's and Class members' rights, thereby entitled Plaintiff and Class members to punitive damages.

97.     Defendant Bank of America's ongoing failure to warn EDD cardholders about the risks associated with EDD prepaid debit cards is irreparably harming Plaintiff and Class members, whose EDD benefits remain vulnerable to unauthorized use. Plaintiff and Class members seek injunctive relief, and any and all available damages and/or restitution, in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
(Breach of Contract)
(As to Defendant and DOES 1-20)

98.     Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

99.     Plaintiff and Class members entered into a contract requiring Defendant Bank of America to administer EDD benefits to them through prepaid debit cards.

100.    The contract provides in Section 9:

Federal law (described in the section below entitled "Regulation E Liability Disclosure; Your Liability in Case of Loss, Theft or Unauthorized Transactions") may limit your liability for unauthorized transactions in some circumstances. Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to the following terms and conditions . . . .

101.    The contract provides in Section 11:

We will determine whether an error occurred within 10 business days after we hear from you—and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your Account within 10 business days for the amount you think is in error, so that you will have the money during the time it takes us to complete our investigation.

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

102.    Plaintiff and Class members did all, or substantially all, of the significant things that the contract required and fulfilled any conditions precedent to Defendant's performance, including, among other things, contacting or attempting to contact Defendant Bank of America to reimburse fraudulently appropriated funds within the time specified in the Account Agreement.

103.    Defendant Bank of America failed to perform as promised in the contract by, among other things: (a) failing to timely investigate and resolve claims of unauthorized card use, as required by Section 11 of the Account Agreement; (b) failing to reimburse Plaintiff and Class members for unauthorized card use or provide provisional credit within ten business days, as required by Section 11 of the Account Agreement; and (c) failing to limit EDD cardholders' liability as required by Section 9 of the Account Agreement.

104.    Plaintiff and Class members were harmed by Defendant Bank of America's conduct and have suffered actual damages in an amount equal to the difference in the value of the banking services they provided valuable consideration for and the banking services they received.

## EIGHTH CAUSE OF ACTION
### (Breach of Implied Contract)
### (As to Defendant and DOES 1-20)

105.    Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

106.    Defendant Bank of America provided banking services to Plaintiff and members of the Class. In exchange Defendant benefitted and continues to benefit from Plaintiff and the Class because it makes money through fees associated with the use of EDD debit cards.

107.    Defendant Bank of America acknowledged these benefits and accepted or retained them.

108.    In using Defendant Bank of America's banking services, Plaintiff and Class members continually provide it with the ability and opportunity to make money through fees associated with EDD debit cards.

109.    By providing Defendant that ability and opportunity, and upon Defendant's acceptance of it, Plaintiff and Class members, on the one hand, and Defendant Bank of America, on the other, entered into implied contracts separate and apart from Defendant's terms of service,

under which Defendant and agreed to and was obligated to take reasonable steps to ensure that the prepaid EDD debit card accounts were secure against unauthorized transactions and that any claims regarding unauthorized transactions were adequately investigated and resolved.

110.    All parties understood that such protections and customer service obligations were integral and essential to Defendant Bank of America's business.

111.    Under those implied contracts, Defendant Bank of America was obligated to provide Plaintiff and Class members with EDD prepaid debit card services that were suitable for their intended purpose of saving and accessing EDD benefits as needed, rather than such services that failed to take reasonable steps to safeguard their money, warn or notify them in the event that their EDD benefits were at risk of unauthorized use, or adequately investigate or resolve claims regarding unauthorized transactions.

112.    Without such implied contracts, Plaintiff and Class members would not have used Defendant Bank of America's prepaid debit card services and would not have conferred benefits on Defendant.

113.    Plaintiff and Class members fully performed their obligations and fulfilled any relevant conditions under these implied contracts, including by, among other things, seeking assistance from Defendant regarding suspected unauthorized transactions on EDD accounts.

114.    As described throughout, Defendant Bank of America did not take reasonable steps to protect Plaintiff's and Class members' deposited funds from unauthorized transactions or to adequately investigate or resolve claims regarding unauthorized transactions. In fact, Defendant willfully violated those interests by electing to issue EDD prepaid debit cards with outdated magnetic stripe technology, which it knows to be uniquely vulnerable to fraud, in lieu of EMV chip technology, which has been included in Bank of America consumer debit cards for over six years for the express purpose of protecting against fraud.

115.    Because Defendant Bank of America failed to take reasonable steps to protect EDD prepaid debit card holders' funds from being appropriated through unauthorized transactions and failed to take reasonable steps to timely or adequately respond to claims regarding unauthorized transactions, it breached its implied contracts with Plaintiff and Class members.

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

116.    Defendant's failure to fulfill its obligations to take reasonable steps to protect EDD prepaid debit card holders' funds from being appropriated through unauthorized transactions, and its failure to take reasonable steps to timely or adequately respond to claims regarding unauthorized transactions resulted in Plaintiff and Class members receiving banking services that were of less value than they provided consideration for.

117.    Stated otherwise, because Plaintiff and Class members provided valuable consideration for banking services in the form of fees associated with the cards, they did not receive the full benefit of their bargain.

118.    As a result of Defendant Bank of America's conduct Plaintiff and members of the Class have suffered actual damages in an amount equal to the difference in the value of the banking services they provided valuable consideration for and the banking services they received.

119.    Accordingly, Plaintiff, on behalf of himself and Class members, seeks an order declaring that Bank of America's conduct constitutes a breach of implied contract, and awarding them damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and Fair Dealing)
(As to Defendant and DOES 1-20)

120.    Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

121.    There is a covenant of good faith and fair dealing implied in every contract and every implied contract. This implied covenant requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement. To fulfill its covenant, a party must give at least as much consideration to the interests of the other party as it gives to its own interests.

122.    Under the covenant of good faith and fair dealing implied in its Account Agreements with Plaintiff and Class members, Defendant Bank of America was and is obligated to, at a minimum, (a) safeguard Plaintiff's and Class members' EDD benefits; (b) respond to the rise in demand for EDD benefits which occurred in 2020 by issuing chip cards; (c) ensure its customer service operation was capable of providing effective assistance to EDD cardholders who experience

fraud on their debit card; (d) warn or notify Plaintiff and Class members if their EDD benefits were at risk of being subject to unauthorized use; (e) to timely and adequately investigate and resolve claims regarding unauthorized transactions; and (f) extend provisional credit in cases where fraud claims are not timely resolved.

123.    Defendant Bank of America breached the implied covenant of good faith and fair dealing by, among other things: (a) failing to issue EDD debit cards with microchips, despite having for years been well-aware of the risks associated with magnetic "stripe" technology; (b) failing to respond to the rise in demand for EDD benefits by issuing chip cards; (c) failing to ensure its customer service operation was capable of providing effective assistance to EDD cardholders who experience fraud on their debit card; (d) failing to warn or notify EDD cardholders that their EDD benefits were and remain at risk of being subject to unauthorized use; (e) failing to timely or adequately process EDD cardholders' claims regarding unauthorized transactions; and (f) failing to extend provisional credit in cases where fraud claims are not timely resolved.

124.    As a direct and proximate result of Bank of America's breaches of the implied covenant of good faith and fair dealing, Plaintiff and other Class members have suffered actual losses and damages.

## TENTH CAUSE OF ACTION
(Breach of Contract – Third Party Beneficiaries)
(As to Defendant and DOES 1-20)

125.    Plaintiff realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

126.    Defendant Bank of America and the State of California EDD entered into a contract requiring Defendant Bank of America to administer EDD benefits to Plaintiff and Class members through prepaid debit cards.

127.    A motivating purpose of the EDD in entering the contract was for EDD benefits recipients to benefit from the contract through secure administration of EDD benefits and competent customer service relating to the administration of EDD benefits. EDD cardholders are accordingly third-party beneficiaries of the contract between the EDD and Defendant Bank of America.

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596-3727

128.    Plaintiff, Class members, and the State of California EDD did all, or substantially all, of the significant things that the contract required and fulfilled any conditions precedent to Defendant Bank of America's performance.

129.    Defendant Bank of America failed to perform as promised in the contract by, among other things: (a) failing to take adequate steps to prevent fraud on EDD accounts, including but not limited to its failure to incorporate EMV chips into EDD debit cards; (b) failing to timely investigate and resolve claims of unauthorized card use, as required by Section 11 of the Account Agreement; and (c) failing to reimburse Plaintiff and Class members for unauthorized card use or provide provisional credit within ten business days, as required by Section 11 of the Account Agreement.

130.    Plaintiff and Class members were harmed by Bank of America's conduct and have suffered actual damages in an amount equal to the difference in the value of the banking services they provided valuable consideration for and the banking services they received.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.    For an order certifying the Class as defined above, appointing Plaintiff as representative for the Class, and appointing Plaintiff's counsel as counsel for the Class;

B.    For declaratory and injunctive relief prohibiting Defendant from engaging in the misconduct described herein, including but not limited to ordering that Defendant take each of the following corrective actions:

1)    Refund all Class members for the value of unauthorized transactions from their EDD accounts;

2)    Issue EDD debit cards with EMV chips to all current and future EDD cardholders;

3)    Establish a customer service website, e-mail address, and telephone hotline that allow EDD cardholders to report unauthorized transactions and request reimbursement of the same in a reasonably easy and hassle-free manner;

4)    Respond to EDD cardholders' claims of unauthorized transactions and requests for

reimbursement within a reasonable time; and

5) Provide a reasonable opportunity for Class members to file claims regarding unauthorized transactions that otherwise would be deemed expired;

C.    For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Class members, including disgorgement, unjust enrichment, restitution, and all other available relief under applicable law, including but not limited to accrued interest for the periods during which Plaintiff and Class members were deprived of funds in their EDD accounts due to unauthorized transactions;

D.    For an award of punitive damages pursuant to applicable law;

E.    For reasonable attorneys' fees and expenses as permitted by California Code of Civil Procedure § 1021.5, 15 U.S.C. § 1693m(a)(3), and any other applicable statute or law;

F.    For taxable costs;

G.    For pre- and post-judgment interest as allowed by law; and

H.    For any other relief the Court deems just.

## DEMAND FOR JURY TRIAL AS TO ALL CAUSES OF ACTION

Plaintiff hereby demands that this matter be tried by jury as to all causes of action.

Dated: January 28, 2021                     **KNOX RICKSEN LLP**

By:    */s/ Thomas E. Fraysse*
      Thomas E. Fraysse
      Maisie C. Sokolove
      Amanda M. Plowman
      Attorneys for Plaintiff
      and the Proposed Class

EXHIBIT A

**BANK OF AMERICA** ⧹⧹⧹     **EDD Debit Card**

# Terms and Conditions

## California Employment Development Department Debit Card Account Agreement

Effective Date March 1, 2018

By using or allowing another to use your California Employment Development Department Debit Card, you agree to be bound by the terms and conditions of this California Employment Development Department Debit Card Account Agreement ("this Agreement"). This Agreement discloses the terms and conditions of your California Employment Development Department Debit Card and you are not entitled to any rights or benefits given to deposit account customers or debit card holders at Bank of America, N.A. unless such rights or benefits are contained in this Agreement. **Please read this Agreement and the enclosed Fee Disclosure and Other Important Disclosures ("Fee Disclosure") carefully and keep it for future reference** In this Agreement: "Account" means the account accessed by your Card; "Card" or "Government Prepaid Debit Card" means the Government Prepaid Debit Card issued by us on behalf of California Employment Development Department ("EDD") to enable you to receive Unemployment or State Disability Insurance benefits to eligible recipients, "you" and "your" mean the recipient to whom we issue a Card or his or her legal representative; and "we", "us", and "our" mean Bank of America, N.A.

1  **General Information.**
   **General Account Information.** Your Account is funded by the EDD with deductions for transactions and fees as more fully described in this Agreement. No interest is paid on the balance for any period of time.
   **Individual Accounts Only.** Each Account is individually owned by the recipient who receives payments from the EDD. No joint ownership of an Account is permitted. You may have only one Card for each Account.
   **Accounts are Not Transferable.** Your Account is not transferable to any other person. We reserve the right not to acknowledge or accept attempted pledges or assignments of, or purported security interests in, your Account.
   **Business Days.** For purposes of this Agreement, our business days are Monday through Friday, excluding bank holidays.

2  **Deposits to Your Account and Funds Availability.**
   **Funds Added to Your Account.** Deposits to your Account may only be made by the EDD. We will add funds to your Account only (a) in accordance with instructions from the EDD or (b) to remedy

an error made by us or by someone who has accepted your Account. For information on the amounts and scheduled dates of additions to your Account, please contact the EDD. Once funds are properly deposited, the EDD has no rights to any funds in your Account, except as otherwise provided by law or the rules of the network used to make the deposit.

**When Funds are Available for Withdrawal.** Funds are available for your use on the day we have been instructed by the EDD to fund your Account. Once the funds are available, you may make the transactions described below. Funds received by us may be delayed for a longer period if there is an emergency, such as failure of computer or communications. We will notify you if we delay your ability to make transactions as a result of an emergency and we will tell you when funds will be available.

**Overpayments and Reversals.** If funds to which you are not entitled are deposited to your Account by mistake or otherwise, we may deduct these funds from your Account. If there are not enough funds, we may overdraw your Account. We can do this without giving you any prior notice or demand. **"Freezing" Your Account.** If we suspect irregular, unauthorized, or unlawful activities may be involved with your Account, we may "freeze" (or place a hold on) the balance pending an investigation of such suspected activities. If we freeze your Account, we will give you a notice required by law.

3  **Transfer Types and Limitations.**

**Account Access.** You may use your Card to:

(1) Pay for purchases at places that have agreed to accept the Card as described below.

(2) Withdraw cash from your Account including by way of Emergency Cash Transfers as described below.

(3) Transfer funds from your Account to a checking or savings account owned by you in the United States whenever you request as described below.

(4) Pay bills directly [by telephone] from your Account in the amounts and on the days you request Some of these services may not be available at all terminals.

**Purchases.** Your Card bears the Visa® symbol on the front face. Your Card may be used for purchases at merchants who accept Visa debit cards at a point-of-sale ("POS") terminal. Visa transactions may be made by presenting your Card and signing the receipt. You may also use your Card for purchases at POS terminals that require a Personal Identification Number ("PIN"). Some merchants will accept a transaction for an amount greater than the goods or services purchased and will refund the difference to you in cash.

**Use at Cirrus® or Visa Automated Teller Machines.** Your Card may be used for transactions at Cirrus or Visa Automated Teller Machines ("ATMs") to make cash withdrawals or balance inquiries requiring a PIN. See the Fee Disclosure for fees which may apply to ATM transactions. Most ATMs require that cash withdrawals be made in multiples of a dollar amount (e.g. $10 or $20). In addition, some ATM operators have maximum amounts that may be withdrawn at a machine in one transaction. Many merchants limit the amount of cash that may be obtained in connection

with a purchase transaction.

**Obtaining Cash.** Offices of financial institutions that accept Visa cards, including Bank of America banking centers, will accept your Card for obtaining cash.

**Online Funds Transfer.** Your Card can be used to transfer funds online to a checking or savings account owned by you in the United States, subject to certain restrictions. This type of transfer may only be requested online via the Internet at www.bankofamerica.com/eddcard. Once funds are transferred, you will not be able to have the funds returned to your Account if the routing number or account number you provide for your checking or savings account is not correct.

**Emergency Cash Transfers.** You may obtain cash at a Western Union location in the United States ("Emergency Cash Transfer"). All Emergency Cash Transfer requests must be initiated through the Bank of America California Employment Development Department Debit Card Service Center (the "Service Center"). All requests for Emergency Cash Transfers are subject to the Emergency Cash Transfer Fees stated in the Fee Disclosure. All requests for Emergency Cash Transfers are subject to Western Union guidelines which could vary by state and could include certain dollar limits, identification requirements and other restrictions. If you request an Emergency Cash Transfer, you agree that we have no liability for any losses or damages that you may suffer arising out of any action, non-action or delayed action on the part of Western Union or its agents or any other third party.

**Limitations on Frequency of Transfers.** You may withdraw up to $1,000 from any ATM each 24-hour period using the Card. For security reasons, there may be limits on the amount, number or type of transactions that you can make using your Card, and we may restrict access to your Card if we notice suspicious activity.

4  **Additional Account Agreements.**

**Account Alert Service.** You may sign up online for text or email alerts (the "Account Alert Service") to the mobile device or email address provided by you. Text or email alerts are dependent upon users providing a valid and current Internet email address or valid mobile device phone number. You can set up alert messaging options online at www.bankofamerica.com/eddcard. After signing up for the Account Alert Service, you must respond with an appropriate code to an alert sent to your mobile device (double opt-in) in order to begin receiving text message alerts. If you do not respond with the code provided in the alert, the Account Alert Service is not authorized. Each message references the last four digits of the Card for which the alert is sent. To change your alert messaging options or to discontinue the Service, go to www.bankofamerica.com/eddcard.

If you sign up for the Account Alert Service, you agree that we may send you text alerts through your wireless service provider. We do not charge for the Account Alert Service, but you are responsible for all charges and fees associated with usage of email or text messages imposed by your Internet, wireless, or cellular service provider(s).

Depending on the timing and the delivery mechanism, your balance may not reflect your most recent transactions. We assume no responsibility for transactions that may affect your balance after daily processing.

You understand and agree that the information provided to you by email or text alert is provided "as is" without warranty of any kind, either expressed or implied, and that we assume no responsibility for the timeliness, deletion, misdelivery, errors in the content of any email or text alerts or failure to store any user communications or personalization settings. In no event shall we be liable for any special, incidental, indirect, or consequential damages of any kind, or any damages whatsoever resulting from loss of use, data or profits, whether or not advised of the possibility of damage, and on any theory of liability, arising out of or in connection with the use or provision of this information.

The Account Alert Service can be terminated if we determine that your mobile device or email address does not support delivery of alerts, or if you have de-listed your mobile device or email address. In addition, we reserve the right at any time and from time-to-time to modify or discontinue, temporarily or permanently, the Account Alert Service (or any part thereof) with or without notice.

**Refunds and Merchant Disputes.** You do not receive cash refunds for returns of merchandise or services purchased using your Card. When a merchant gives you a refund, it is made on a credit voucher and will appear in your next monthly Account statement or in your Account history. You must settle any disputes you have about the goods or services directly with the merchant. We are not liable for any misrepresentations that a merchant makes about the goods or services you purchase with your Card, or if a merchant for any reason refuses to accept your Card or fails to abide by the applicable network rules governing your Card.

**Legal Transactions.** You agree that you will only use your Card for transactions that are legal. For example, Internet gambling transactions may be illegal in your state. Display of a Visa or other logo by an on-line merchant does not mean that the transaction is legal where you conduct it. You agree that we may decline transactions we believe may be illegal or in violation of the applicable network rules. You also agree that if we do not decline the transaction, we may charge your Account and we are not liable to you if you engage in an illegal transaction.

**ATM Safety.** Please refer to the safety tips for using your Card at ATMs found on the mailer that came with your Card.

5  **Your Responsibility for Authorized Card Account Use and Negative Balances.**
**Use of Your Card and PIN.** Your Card and PIN are provided for your use and protection and you will:
(a) Not disclose your PIN or record it on your Card or otherwise make it available to anyone else;

(b) Use your Card, your PIN and any ATM only as instructed;

(c) Promptly notify us of any loss or theft of your Card or PIN; and

(d) Be liable for the authorized or permitted use of your Card and PIN.

**Authorized Use of Card.** If you authorize someone else to use your Card or PIN, you will be responsible for any transactions initiated by such person(s) with your Card or PIN. Transactions will be considered unauthorized only after you notify us that the person is no longer authorized to use your Card.

**Negative Balances. The amount available on your Card will be reduced by the amount of your transactions plus applicable fees. There is no overdraft/credit feature on your Account.** However, if a negative balance does occur in your Account, you agree (a) that we may take the amount of the negative balance from subsequent additions to your Account or (b) to pay us on demand the amount of the negative balance

6   **Bank Fees.**

**Fee Disclosure.** Bank fees associated with your Card are listed in the Fee Disclosure. These fees are imposed by us and retained by us. When you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer).

**Payment of Fees by You.** You agree to pay all fees listed in the Fee Disclosure. Fees will be taken from the balance of your Account as they occur. The EDD may not charge you any fees in connection with your Card or your Account.

**Foreign Transactions/Fees.** If you use your Card to purchase goods or services in a foreign currency or in US dollars with a foreign merchant or to obtain currency from an ATM or an office of a financial institution in a foreign country (a "Foreign Transaction"), we will assess an International Transaction Fee. Please note that Foreign Transactions include U.S. internet transactions made in the U.S. but with a foreign merchant. If the Foreign Transaction is made in U.S. dollars, the International Transaction Fee will be the percentage of that U.S. dollar amount as disclosed in the Fee Disclosure. If the Foreign Transaction is made in a foreign currency, Visa or Mastercard will convert the transaction into a U.S. dollar amount, and the International Transaction Fee will be the percentage of that converted U.S. dollar amount as disclosed in the Fee Disclosure. Any International Transaction Fee will be shown in the transaction section of your monthly Account statement or in your Account history. The currency conversion rate used by Visa will be either (1) a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may differ from the rate Visa receives, or (2) a government-mandated rate in effect for the central processing date. The currency conversion rate used by Mastercard will be either (1) a wholesale market rate selected by Mastercard, or (2) a government-mandated rate. The rate used by Visa or Mastercard on the processing date may

differ from the rate on the date of your transaction.

7  **Right to Receive Documentation of Transactions**

**a. Terminal Receipts.** You usually can get a receipt at the time you make any transaction with your Card at an ATM, teller or POS; except that you may not get a receipt if the amount of the transaction is $15 or less. ATM receipts are not final because each transaction is subject to verification by us. If the receipt and our records conflict, our records will govern.

**b. Preauthorized Credits.** You can call us at 1.866.692.9374, 1.866.656.5913 TTY, or 423.262.1650 (Collect, when calling outside the U.S.), to find out whether or not a direct deposit has been made.

**c. Delivery of Statements and Notices.** If you request to receive your monthly Account statement by mail, we will deliver it to the last address we have on our records for you. [See the Fee Disclosure for the fee for receiving monthly Account statements by mail.] You agree to notify us promptly, in writing, at the address listed in Section 11 below, of any change of address or you may change your address online at www.bankofamerica.com/eddcard. If you receive your monthly Account statement by mail, you may request that rather than receiving it by mail, you may review it electronically. If you wish to do so, you may make this request online at www.bankofamerica.com/eddcard or you may contact the Service Center at the address or phone number below.

**CARDHOLDERS WHO DO NOT RECEIVE MONTHLY ACCOUNT STATEMENTS BY MAIL**

**Access to Your Account Information.** You may obtain information about the amount of money you have remaining in your Account by calling 1.866.692.9374, 1.866.656.5913 TTY, or 423.262.1650 (Collect, when calling outside the U.S.). That information is also available when you make a balance inquiry at an ATM. This information, along with a 12-month history of Account transactions, is also available online at www.bankofamerica.com/eddcard.

You also have the right to obtain a 24-month written history of Account transactions by calling 1.866.692.9374., 1.866.656.5913 TTY, or 423.262.1650 (Collect, when calling outside the U.S.), or writing to us at: Bank of America, P.O. Box 8488 , Gray, TN 37615-8488. You will not be charged a fee for this information unless you request it more than once per month.

**Prompt Review of Account Information.** You agree to promptly review your Account information and to notify the Service Center at the address or phone number above at once if any Account information shows transactions that you did not make or authorize. Section 11 below has more specific information about disputing transactions, fees, or errors.

**CARDHOLDERS WHO RECEIVE MONTHLY ACCOUNT STATEMENTS BY MAIL Monthly Card Account Statements.** Upon your request, we will provide you with an Account statement monthly

for every month in which your Account is open. The statement will include information about the transactions you made, deposits, fees and adjustments to your Account. A fee may apply to receive a monthly paper statement. For more information see the Fee Disclosure.

**Prompt Review of Statements.** You agree to promptly review your monthly Account statements and to notify the Service Center at the address or phone number above at once if any statement shows transactions that you did not make or authorize. Section 11 below has more specific information about disputing transactions, fees, or errors shown on your monthly Account statement.

8   **Claims by Third Parties Against Your Account.**

**Claims or Disputes by Third Parties Concerning Your Account.** If a third party makes a claim against funds in your Account, or if we have reason to believe there is or may be a dispute over matters such as the ownership of your Account or the authority to withdraw funds, we may, in our sole discretion and in accordance with applicable state or federal law (a) continue to rely on current enrollment forms or other Account documents, (b) honor the competing claim upon receipt of evidence we deem satisfactory to justify such action, (c) freeze all or part of the funds until the dispute is resolved to our satisfaction, or (d) pay the funds into an appropriate court of law for resolution.

**Liens and Attachments.** Following receipt by us of any notice of lien, process in attachment, garnishment or other proceeding relating to you or your Account, we are authorized, without notice to you, unless otherwise required by law, to withhold transfer of so much of the balance of your Account as may be the subject of such notice or process, and to pay such amount to the court or creditor, in accordance with applicable state or federal law without responsibility to you for such withholding or payment or for refusal to honor transfers made by you.

9   **Bank of America's "Zero Liability" Policy for Unauthorized Transactions.** Federal law (described in the section below entitled "Regulation E Liability Disclosure; Your Liability in Case of Loss, Theft, or Unauthorized Transactions ") may limit your liability for unauthorized transactions on your Account, but you may still be liable in some circumstances. Under the Bank of America "zero liability" policy, you may incur no liability for unauthorized use of your Card up to the amount of the unauthorized transaction, provided you notify us within a reasonable time of the loss or theft of your Card, Card number or PIN or its unauthorized use, subject to the following terms and conditions:

**Excluded transactions.** Our zero liability policy does not apply to any unauthorized electronic fund transfer on an account which does not involve use of a Card or Card number.

**"Unauthorized" defined.** A transaction is considered "unauthorized" if it is initiated by someone other than you (the cardholder) without your actual or apparent authority, and you receive no benefit from the transaction. A transaction is not considered "unauthorized" if 1) you furnish your Card, Card number or other identifying information to another person and expressly or implicitly

give that individual authority to perform one or more transactions, and the person then exceeds that authority, or 2) for any other reason we conclude that the facts and circumstances do not reasonably support a claim of unauthorized use.

**"Reasonable" time defined.** Reasonable time will be determined in our sole discretion based on the circumstances but will not be less than the time frames specified under the Electronic Fund Transfer Act or Regulation E (see Section 10 below).

**Other considerations.** We may ask you for a written statement, affidavit or other information necessary to support your claim. If you do not provide the requested materials within the time requested or within a reasonable time if no date is stated, and we have no knowledge of the facts or other documentation to further investigate or confirm your claim, our zero liability policy may not apply.

**Limitation of our Liability.** Our liability under this policy is limited to reimbursing you for the amount of your loss up to the face amount of any unauthorized card transaction covered by this policy. We are not liable for any claims, losses or damages that arise out of your misuse of the Card. We are not liable for any claims of special, indirect or consequential damages.

**Your Rights under Regulation E.** If your claim does not meet the prescribed conditions for reimbursement under the above policy, you still retain any consumer rights you may have under Regulation E, as described in Sections 10 and 11 below, and we will automatically re-examine the claim in accordance with those rights.

10 **Regulation E Liability Disclosure; Your Liability in Case of Loss, Theft, or Unauthorized Transactions.**

**Contact Us Promptly.** Please contact us at the numbers listed below AT ONCE if you believe your Card has been lost or stolen, or if you believe that someone may use or has used your PIN assigned to your Card without your permission. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your Account. If you tell us within two business days after you learn of the loss or theft, you can lose no more than $50 for an unauthorized transaction or a series of related unauthorized transfers should someone use your Card or PIN.

If you do NOT tell us within two business days after you learn of the loss or theft of your Card or PIN and we can prove we could have stopped someone from using your Card or PIN without your permission if you had told us, you could lose as much as $500.

Also, if your monthly Account statement or your Account history shows transfers that you did not make, including those made by your Card, Card number, PIN or other means, tell us at once. If you receive a monthly Account statement and you do not tell us within 60 days after the statement was mailed to you, you may not get back any money you lost after the 60 days if we can prove that

we could have stopped someone from taking the money if you had contacted us on time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.

If you do not receive a monthly Account statement and do not tell us within 60 days after the earlier of the date you electronically access your Account if the error could be viewed in your electronic history or the date we sent the FIRST written history on which the error appeared (but in any event within 120 days after the transaction allegedly in error was credited or debited to your Account), you may not get back any money you lost after the applicable 60 or 120 day period if we can prove that we could have stopped someone from taking the money if you had contacted us on time. If a good reason (such as a long trip or hospital stay) keeps you from notifying us, we will extend the time periods.

If you believe your Card has been lost or stolen, call us at 1.866.692.9374, 1.866.656.5913 TTY, or 423.262.1650 (Collect, when calling outside the U.S.) or write to: Bank of America, P.O. Box 8488, Gray, TN 37615-8488.

NOTE: These liability rules are established by Regulation E which covers accounts that involve the use of a Card. Our zero liability policy, as described in Section 9 above, regarding unauthorized transactions may give you more protection, provided you report the transactions promptly. You should also note that when you give someone your Card or PIN, you are authorizing that person to use your Card and you are responsible for all transactions that person performs with your Card or PIN. These transactions are authorized transactions. Transactions are considered unauthorized only after you notify us that the person is no longer authorized. Remember, do not write your PIN on your Card or carry your PIN with you. This reduces the possibility of someone using your Card without your permission if it is lost or stolen.

11 **Error Resolution.**

In Case of Errors or Questions About Your Transactions:

Telephone us at: 1.866.692.9374

1.866.656.5913 TTY

423.262.1650 (Collect, when calling outside the U.S.)

Or write to:

Bank of America

P.O. Box 8488

Gray, TN 37615-8488

**CARDHOLDERS WHO RECEIVE MONTHLY ACCOUNT STATEMENTS BY MAIL**

Call or write as soon as you can if you think your monthly Account statement or receipt is wrong or if you need more information about a transaction listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error

appeared. You will need to tell us:

(a) Your name and Card Account number.
(b) Why you believe there is an error, and the dollar amount involved.
(c) Approximately when the error took place.

If you tell us orally, we may require that you send your complaint or question in writing within 10 business days.

## CARDHOLDERS WHO DO NOT RECEIVE MONTHLY ACCOUNT STATEMENTS BY MAIL

Call or write as soon as you can if you think an error has occurred in your Account. We must allow you to report an error until 60 days after the earlier of the date you electronically access your Account, if the error could be viewed in your electronic history, or the date we sent the FIRST written history on which the error appeared; but in any event you must report the error no more than 120 days after the transaction allegedly in error was credited or debited to your Account. You may request a written history of your transactions at any time by calling or writing to us at the numbers and address listed above. You will need to tell us:

(1) Your name and Card Account number.
(2) Why you believe there is an error, and the dollar amount involved.
(3) Approximately when the error took place.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

## WHEN YOU WILL HEAR FROM US

We will determine whether an error occurred within 10 business days after we hear from you— and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your Account within 10 business days for the amount you think is in error, so that you will have the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your Account.

For errors involving new accounts, POS, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your Account for the amount you think is in error.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of

the documents that we used in our investigation. If you need more information about our error-
resolution procedures, call or write to us using the contact information listed above.

12 **Our liability for failure to complete transactions.**

If we do not complete a transfer to or from your Account on time or in the correct amount
according to this Agreement, we will be liable for your losses or damages. However, there are
some exceptions. We will not be liable, for instance:

○ If, through no fault of ours, you do not have enough available money in your Account to make
the transaction;

○ If the ATM where you are making the transaction does not have enough cash;

○ If the ATM, terminal or system was not working properly and you knew about the breakdown
when you started the transaction;

○ If circumstances beyond our control (such as power outages, equipment failures, fire or flood)
prevent the transaction, despite reasonable precautions that we have taken;

○ If your Card or PIN has been reported to be, or suspected of being, lost or stolen, and we have
taken action to prevent transactions with the Card or PIN;

○ If your Account is subject to some legal process, right of setoff or encumbrance restricting the
transaction, or if the funds in your Account are not immediately available for completing a
transaction.

13 **Preauthorized Transactions.**

**Right to Stop Payment and Procedure for Doing So.** If you have told us in advance to make
regular payments out of your Account, you can stop any of these payments. Here's how:

Call us at 1.866.692.9374, 1.866.656.5913 TTY, or 423.262.1650 (Collect, when calling outside the
U.S.), or write us at: Bank of America, P.O. Box 8488, Gray, TN 37615-8488, in time for us to receive
your request three business days or more before the payment is scheduled to be made. If you call,
we may also require you to put your request in writing and get it to us within 14 days after you call.

**Notice of Varying Amounts.** If these regular payments may vary in amount, the person you are
going to pay will tell you, 10 days before each payment, when it will be made and how much it will
be.

Our Liability for Failure to Stop Payment of Preauthorized Transfers. If you order us to stop one of
these payments three business days or more before the transfer is scheduled, and we do not do
so, we will be liable for your losses or damages.

14 **Privacy**

As part of establishing your Account, you will receive with your Card a copy of the Prepaid Card
Privacy Notice which generally addresses our policy for handling and disclosing information for
your Card. You may view our Prepaid Card Privacy Notice at
www.bankofamerica.com/prepaidprivacy. With respect to any information we collect from you as a

result of your Card, we will only share such information related to your Account, from time to time, subject to any applicable financial privacy laws or other laws or regulations, (a) where it is necessary for completing transactions; (b) in response to any subpoena, summons, court or administrative order, or other legal process which we believe requires our compliance; (c) in connection with collection of indebtedness or to report losses incurred by us; (d) in compliance with any agreement between us and a professional, regulatory or disciplinary body; (e) in connection with potential sales of businesses; (f) to service providers who help us meet your needs by assisting us in providing the services under this Agreement; or (g) If you give us your written permission.

15  **Recording and Monitoring Telephone Calls.**

We may record or monitor telephone calls between you and us. We need not remind you of our recording or monitoring before each call unless required to do so by law.

16  **Amendment/Termination.**

**Amendments.** We may, at any time, change the terms and conditions in this Agreement, including the amount of any fee. We may add new terms and conditions and we may delete or amend existing terms and conditions. We generally send you at least 21 days' advance notice of an adverse change, including increased fees to you, increased liability for you, fewer types of available electronic fund transfers, or stricter limitations on the frequency or dollar amount of transfers. If a change is not adverse to you, however, we may make the change at any time without advance notice. If you do not agree with the change, you may close your Account. However, if you continue to use your Account or keep it open, you accept and agree to the change.

**Our Closure or Suspension of Your Account.** We may close or suspend your Account at any time. Your Card remains our property. We may cancel your right to use your Card at any time. Once your Account has been closed, you agree to discontinue using your Card. If we close your Account, we may, at our option, apply the remaining balance to a new account for your benefit. If you have not spent the remaining balance prior to Account closure, you may contact the Service Center to request a check for the remaining balance, less the Paper Check Fee.

**Your Closure of Your Account.** If, at the time you close your Account, all transactions have cleared and there is no remaining balance, your Account will be closed to further use. If there is a remaining balance, you may use your Card to reduce the balance to zero before closing your Account. Alternatively, you can contact the Service Center to request a check for the remaining balance of your Account, less the Paper Check Fee, or request an Emergency Cash Transfer. You understand that you are responsible for negative balances that occur after your notice of closure to the same extent as provided in this Agreement for an open Account. You agree to destroy your Card after your Account is closed.

17  **Unclaimed Property.**

Any remaining unclaimed balance will be reported and remitted as unclaimed property to the appropriate state as required by state law after a period of time defined by that state's law. After we turn the funds over to the state, we have no further liability to you for the funds and you must

apply to the appropriate state agency to reclaim your funds.

18 **Governing Law/Severability.**

This Agreement will be governed by the laws and regulations of the United States and, to the
extent not so covered, by the laws and regulations of the State of California. A determination that
any part of this Agreement is invalid or unenforceable will not affect the remainder of this
Agreement.

19 English Document Controlling.

As a service that we may provide to you at your request, we may communicate certain information
to you in Spanish. Any legal clarifications which may need to be made will be based on the use and
application of the English versions, including but not limited to this Agreement and the Fee
Disclosure.

20 Fee Disclosure and Other Important Disclosures.

A copy of our Fee Disclosure and Other Important Disclosures is included with, and incorporated
in, this Agreement.